UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| CHARLES W. MILLER, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| v. | ) | No. 4:07-cv-9 |
| | ) | *Judge Mattice* |
| SHERIFF MURRAY BLACKWELDER, | ) | |
| NURSE BRENDA BURNS, LINCOLN | ) | |
| COUNTY JAIL; | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Charles W. Miller ("Miller"), was a prisoner confined at the Lincoln County Jail when he filed his *pro se* civil rights complaint pursuant to 42 U.S.C.§ 1983 (Court File No. 2). Miller filed a document he entitled "Motion for Amendment of Complaint," which the Court construed as a motion for injunctive relief, since it requested the Court to give him relief from Defendants' alleged retaliation (Court File 17). The Court ordered Defendants to file a response and mailed a copy of the Order to Plaintiff at his address of record, the Lincoln County Jail, on September 20, 2007. The document was returned to the District Court Clerk as undeliverable on October 3, 2007.

Defendants' response to the motion for injunctive relief confirms that Miller is no longer at the Lincoln County Jail (Court File No. 20). The affidavit of Robert Rowe, Chief Administrator of Lincoln County Jail, reflects Miller was transferred to Brushy Mountain Correctional Complex on September 24, 2007. As of July 17, 2008, Miller has not notified the Court of his change of address. The Court previously warned Miller that failure to notify the Court of his change of address would

1

result in the dismissal of this action. However, since the Court has been apprised of Miller's new address, it will not dismiss the case for failure to notify the Court of his change of address.

Nevertheless, for the reasons explained herein, Plaintiff's complaint will be **DISMISSED** (Court File No. 2) and Defendants' motions for summary judgment will be **GRANTED** (Court File No. 22).

I.  **Non-Dispositive Motions**

The Court previously reserved ruling on a motion filed by Miller which the Court construed as a motion requesting injunctive relief, since he was asking the Court to relieve him being forced to sleep on the floor without a blanket and denied showers and hygiene items (Court File 17). Defendants have submitted a response and an affidavit by Chief Administrator Robert Rowe denying the claims of retaliation to which Miller has not responded.[1] Miller's motion requesting injunctive relief was not made under oath and he has submitted neither a sworn affidavit nor any response refuting Chief Administrator Robert Rowe's affidavit. Nevertheless, because Miller is no longer incarcerated at the Lincoln County Jail, this request for injunctive relief is moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (claims requesting declaratory and injunctive relief were

---

[1] Unlike Miller's request for injunctive relief which was not under oath, Robert Rowe's affidavit explains that after accommodating Miller's request to remain in cell block "D," a maximum security cell, until his sentencing and the inmate Miller was having problems with was transferred, Miller was moved (on or about September 14, 2007) to the general population where, as a result of overcrowding, he had to sleep on a mattress that was on the floor. Thus, he was provided a mattress, two sheets, and a blanket. In addition, Miller was allowed out of his cell for an hour each day at which time he could shower or use the telephone. On Wednesdays, Miller routinely obtained hygiene supplies that were handed out to inmates who did not have money to buy their own supplies. Miller was transferred to the Tennessee Department of Corrections (TDOC) on or about September 24, 2007.

2

moot was because plaintiff was no longer in the institution). Accordingly, Miller's motion for injunctive relief is **DENIED as MOOT** (Court File No. 17).

## II. Standard of Review

### A. *Pro Se* Pleadings

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt a plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995).

The Court screens the complaint pursuant to 28 U.S.C. § 1915A and § 1915(e). Section 1915(e)(2) requires the Court to dismiss a case at any time if the Court determines it is frivolous or fails to state a claim upon which relief can be granted.

### B. Screening Pursuant to 28 U.S.C. §§ 1915A and 1915(e)

When screening a prisoner complaint, a district court must examine both § 1915(e)(2) and § 1915A. If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the

> complaint under § 1915(e)(2). The requirements of §1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet §1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under §1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)(2). *See In re Tyler*, 110 F.3d [528], 529-30 [(8th Cir. 1997)]. We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

*McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

### C. Summary Judgment

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the

4

non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex Corp*., 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

**II.     Facts**

Miller, a pre-trial detainee at the time he filed his complaint, makes the following claims:

> Lincoln County Jail Nurse, charged pre-trial detainee Charles Miller on 1/23/07 the amount of $40.50 for medical treatment and for prescriptions for aspirin/laxitive's [sic] cold pills (sinus medication) no medical staff were seen at this time[,] Doctor or Nurse[.] Inmate was charged Five Dollars just for placing name on "sick call sheet and Five Dollars for seeing doctor when none was seen.
>
> Inmate Miller was also charged $5.00 for initial screening when entering facility in which no doctor was seen at this time.
>
> On 1/24/07 Inmate was again charged $24.04 for medical services and prescriptions for aspirin/laxitive [sic] and no doctor was seen or nurse and billed for $63.41, which is preposteous [sic] to say the least! $5 just to say you are sick!

(Court File No. 1, pp. 3-4).

**III.    Analysis**

Initially, the Court notes Miller has identified the Lincoln County Jail as one of the defendants. The jail is not a legal entity amenable to being sued under 42 U.S.C. § 1983 but is merely a name assigned to the building which houses inmates. The jail is a building in the county and, as such, is not a separate legal entity or person who can be sued within the meaning of § 1983. *Seals v. Grainger County Jail*, 2005 WL 1076326 (E.D. Tenn. May 6, 2005) ("The Grainger County

5

Jail, however, is not a suable entity within the meaning of § 1983"). Therefore, all claims brought by Plaintiff against the Lincoln County Jail pursuant to 42 U.S.C. § 1983 will be **DISMISSED**.

Turning to the issues presented in the complaint, the Court will first identify the applicable law for 42 USC § 1983 claims before addressing the specific claims raised by Miller's complaint.

### A. 42 USC § 1983

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by a person acting under color of law, without due process of law. *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Chatman v. Slagle*, 107 F.3d 380, 384 (6th Cir. 1997); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), *cert. denied*, 502 U.S. 1032 (1992). Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give a defendant fair notice of the claims against him. *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

To state a § 1983 claim, the plaintiff must allege sufficient facts that, if true, would establish the defendants deprived him of a right secured by the Constitution of the United States while they acted under color of law. *See Brock*, 94 F.3d at 244.

A complaint must include allegations which support a legal theory of recovery cognizable under § 1983. To state an adequate claim the cause of action must be premised upon more than mere conclusions and opinions. *See Columbia Natural Resources Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) *cert. denied*, 516 U.S. 1158 (1996); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12

(6th Cir. 1987); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-1539 (6th Cir. 1987). This Court is not required to accept as true mere legal conclusions or unwarranted factual inferences. *See Murphy v. Sofamor Danek Group Inc. (In re Sofamor Danek Group)*, 123 F.3d 394, 400 (6th Cir. 1997).

**B.     Medical Charges**

Miller complains about the cost of his medications and being charged for each sick-call slip when he was seen neither by a physician or a nurse. Specifically, Miller complains that even though he did not see a physician or nurse, he was charged a fee when he registered for sick-call and received medication. It is important to note that Miller does not allege he was unable to obtain necessary medical care because of the requirement that he bear the cost, or some portion of the cost. Nor does Miller claim the defendants failed to notify him that his account would be charged $5.00 each time he submitted a sick-call slip. In addition, Miller does not claim that he received inadequate medical care or that Defendants were deliberately indifferent to his serious medical needs. Rather, Miller challenges the charges for his medical care and prescriptions, *i.e.*, the small amount deducted from his trust fund account as a co-payment,.

Defendants contend they are entitled to summary judgment because Miller did not suffer the deprivation of any constitutional right. Defendants assert that although Miller incurred $103.50 in sick-call and medication charges, only $7.09 was deducted from his inmate account. Furthermore, Defendants contend each sick-call slip submitted by Miller was addressed by Nurse Brenda Burns. Miller has not responded to the summary judgment motion nor filed an opposing affidavit.

Although Miller may not have personally seen medical personnel, he does not claim that any of the sick-call slips were not addressed. The record before the Court reflects that Miller received some type of medical service in response to each sick-call slip he submitted and for which a fee was

7

charged. Moreover, Miller paid only $7.09 for the numerous sick-call slips, treatments, and medications he received while incarcerated at the Lincoln County Jail.

Chris Thornton ("Mr. Thornton"), Assistant Jail Administrator for the Lincoln County Jail, submitted an affidavit explaining the jail policy and Miller's medical charges (Court File No. 25). From the period of November 2006 through January 2007, Miller incurred $103.50 in sick-call and medication charges but he paid only $7.09 toward his medical charges. Additionally, Mr. Thorton avers that no collection efforts are ever made on behalf of Lincoln County to collect any outstanding medical fees owed once the inmate leaves the jail (Court File No. 25).

Ms. Brenda Burns, a nurse at the Lincoln County Jail, employed by Lincoln Medical Center, avers:

> 3. Inmate Charles Miller filed numerous requests for medical treatment from the time he was booked on November 3, 2006. As explained to all inmates, Miller was informed that any time he wished to have a medical complaint addressed he must fill out a specific form, a "sick call" slip, that is provided to him at the time medications are handed out each morning. It was explained to Miller that when this form is filled out requesting medical attention it is a sick call. It is jail policy and practice to charge inmates five dollars for each sick call, which includes being seen by Ms. Burns, by the jail physician, by an outside physician, having lab work done, or having any speciality area testing done. Inmate accounts are also debited five dollars for hospital visits. Additionally, each time any medication is prescribed for an inmate it is jail policy and practice to charge his account one dollar and fifty cents for each medication. Whenever an inmate completes a sick call slip, he receives a response appropriate to his medical concern.
>
> 4. Miller was booked on November 3, 2006, and on November 5, 2006, he was taken to the emergency room for chest pains wherein it was noted that he had a recent cough and Bronchitis. He was prescribed Robitussin, Amoxil, 500 mg., three times a day for one week, and HCTZ, 25 mg., once a day. It was noted by history on the ER report that he had suffered an MI in 1995, pneumonia in 1996, and that he had a history of alcohol abuse. It was also noted that he is a smoker. Our jail physician, Dr. Patel, signed off on his ER records as taking the place of an intake exam because he believed that Miller had received such a thorough examination in the emergency room.

5. Between the time Miller was booked into the Lincoln County Jail and January 25, 2007, Miller submitted fifteen sick calls, had one ER visit for chest pains, and had one hospital visit for a knee x-ray. His account reflects charges for all but one of these sick calls. He was also prescribed twenty-three courses of medication. Most of his sick calls during this period related to complaints of headaches, coughing, sneezing, runny nose, and constipation. Miller was given medications for these symptoms on a continual basis. Thus, he was provided with medication for high blood pressure, allergy symptoms, headaches, and constipation, and his total medical bill for this period was $103.50.

6. It is jail policy and practice that, although these charges are made for all inmates for the benefit of record keeping for the sheriff's department, any inmate who is indigent will not have to pay for what he cannot afford and no inmate will be denied medical care because he lacks sufficient funds to pay for it. Furthermore, if an inmate has charges on his account and if he is credited with any money, not all of his credit will be used to satisfy his charges. He will always be left with funds.

7. I addressed each sick call slip that Miller turned in. On certain occasions, I would see Miller, and I would usually call our jail doctor for instructions and for prescriptions. Each of Miller's sick call slips was addressed as appropriate.

(Court File No. 24).

There is no suggestion in the record that the Jail did not adhere to any of the procedures explained in the affidavits submitted with the motion for summary judgment. Although Miller claims he was charged for sick-calls and prescriptions, the receipts he submitted reflect that only $7.09 was actually deducted from his account for medical expenses (Court File Nos. 1 & 25). Moreover, Miller does not deny he received medication or some sort of treatment whenever he submitted sick-call slips. Even if he was not seen by a physician or nurse, the proof before the Court is that Nurse Burns would determine the proper course of treatment based on the complaint or, if necessary, consult with the physician prior to providing Miller with prescriptions to address his complaints.

Although Miller has not alleged a denial of a specific constitutional right, the Court presumes he is alleging an Eighth Amendment violation. "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir.2005). While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. *See Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997) (deliberate indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation); *see also Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (no basis for due process claim where deductions from prisoner accounts were assessments for value received). It is only when medical care is denied to inmates because of their inability to pay that deliberate indifference is implicated, and such is not the case before this Court.

Therefore, the actions about which Miller complains do not violate the constitution, as the assessment of a co-payment for medical treatment does not deprive him of a protected right, privilege, or immunity. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (To allege a valid 42 U.S.C. § 1983 claim, a plaintiff must assert the denial of a right, privilege, or immunity secured by federal law). Co-pay policies are constitutionally permissible if they do not interfere with timely

and effective treatment of serious medical needs. *See Reynolds v. Wagner,* 128 F.3d 166, 174 (3rd Cir.1997) (co-pay policy); *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf,* 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000)(co-pay policy); *Johnson v. Dept. of Public Safety and Correctional Services,* 885 F.Supp. 817 (D.Md.1995) (co-pay policy); *Lewis v. Brazzel,* 2007 WL 4624017, *5 (W.D.La. Oct. 29, 2007); *Coleman v. Whitney,* 2006 WL 3791316, 2 (E.D.La.2006)("Programs that require inmates to bear part of their own medical costs remain within constitutional bounds so long as the program does not condition the providing of necessary medical services on an inmate's ability to pay.").

In summary, the record before the Court reflects Miller has not suffered the deprivation of any constitutional right and there are no genuine issues of material fact that should be decided at trial. The affidavits submitted on behalf of the Defendants are unrefuted by Miller and they clearly establish he was notified that each time he completed a "sick-call" slip he would be charged five dollars per request and that medication was billed at one dollar and fifty cents for each medication; he submitted fifteen sick call requests; he received medical treatment and medications; and the $7.09 he paid for medical treatment was reasonable. Thus, the charge of $1.09 for each prescription and $5.00 to receive medical treatment are reasonable and the deduction of $7.09 from Miller's inmate account for a $103.50 sick call bill simply does not constitute a violation of a constitutional right.

Accordingly, Miller has not demonstrated any constitutional violation under the Eighth Amendment. His claims that Defendants overcharged him or charged him when he was not seen by medical personnel must be dismissed.

**IV. Conclusion**

For the foregoing reasons, Miller has failed to set forth any claims or facts that would entitle him to relief under 42 U.S.C. § 1983. Defendant's motion for summary judgment will be **GRANTED** (Court File No. 22) and Miller's complaint will be **DISMISSED** for failure to state a claim on which relief may be granted under 42 U.S.C. § 1983. 28 U.S.C. §1915(e)(2)(B) (Court File No. 2).

SO ORDERED.

*/s/Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE